UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
LUIS GONDOLA,

                                     Plaintiff,

             -against-                    **MEMORANDUM & ORDER**
                                                            16-cv-369 (AMD) (SJB)

**CITY OF NEW YORK, DMITRIY SHERY,
JOHN RYAN, CLIVE MOYER,** and **MARK
SCARLATELLI**,

                                    Defendants.
-------------------------------------------------------------- x

**ANN M. DONNELLY**, United States District Judge:

      On May 6, 2019, the Honorable Eric N. Vitaliano denied in part and granted in part the defendants' motion for summary judgment on the plaintiff's federal claims about his arrest on October 24, 2014.[1] (ECF No. 51.) On June 3, 2019, the defendants moved for reconsideration of Judge Vitaliano's order denying Lieutenant John Ryan's motion for summary judgment on the plaintiff's claim that Lieutenant Ryan failed to intervene to prevent certain constitutional violations. (ECF No. 53.) The plaintiff opposed the motion for reconsideration and cross-moved on June 10, 2019, arguing that Judge Vitaliano should not have granted qualified immunity to all of the defendants on the false arrest claim or to Detective Shery on the malicious prosecution claim. (ECF Nos. 54, 55.)

      On August 14, 2019, the defendants filed their second motion for reconsideration, this time seeking reconsideration of Judge Vitaliano's order denying the defendants' summary judgment motion on the plaintiff's fair trial claims in light of the Supreme Court's decision in *McDonough v. Smith*, 139 S. Ct. 2149 (2019), and the Second Circuit's decision in *Lanning v.*

---

[1] The case was reassigned to me on May 8, 2019.

*City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018). (ECF No. 57.)

For the reasons discussed below, I dismiss the fair trial claims, as well as the failure to intervene claims premised on the alleged fair trial violations. As a consequence, I dismiss Lieutenant Ryan from the case and permit the following claims to proceed to trial against detectives Shery, Moyer and Scarlatelli: false arrest with respect to the initial stop, and failure to intervene during the false arrest with respect to the initial stop.

## BACKGROUND

The parties do not challenge Judge Vitaliano's discussion of facts in his May 5, 2019 order. (ECF No. 51.) Therefore, I assume the parties' familiarity with the facts, and do not repeat them here.

After Judge Vitaliano's decision, the following claims and defendants remained to be tried: "(1) the portion of the false arrest claim relating to the initial seizure, as to all individual defendants, (2) the fair trial claim, as to Detective Shery and Detective Scarlatelli, and (3) the failure to intervene claim as related to the initial seizure or the denial of a fair trial, as to all individual defendants." (*Id.* at 19-20.) Judge Vitaliano dismissed the other claims, including the malicious prosecution and false arrest (after the initial stop)[2] claims against all the defendants, the fair trial claims against Detective Moyer and Lieutenant Ryan, and the supervisory liability claim against Lieutenant Ryan.

The defendants make two arguments in support of their motions. First, they argue that intervening changes in law—the Supreme Court's decision in *McDonough* establishing favorable termination as an element of a fair trial claim, and the Second Circuit's decision in *Lanning*, which defines favorable termination as an affirmative indication of innocence—mandate

---

[2] For the false arrest claim, the parties distinguish between the initial stop and the subsequent arrest.

dismissal of the plaintiff's fair trial claims. According to the defendants, the plaintiff cannot establish favorable termination of the state criminal proceeding. The defendants also argue that Lieutenant Ryan cannot be liable for failing to intervene because the evidence does not establish that he observed, much less had an opportunity to intervene during the alleged violations.

In support of his motion, the plaintiff maintains that Judge Vitaliano overlooked certain facts when he concluded that the police officers had probable cause to arrest the plaintiff and that probable cause did not dissipate between the arrest and the prosecution. The plaintiff also challenges Judge Vitaliano's conclusion that Lieutenant Ryan could not be liable for fair trial violations.

## LEGAL STANDARD

The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court, and is governed by Federal Rule of Civil Procedure 59(e) and Local Rule 6.3. *See Devlin v. Transp. Commc'ns Int'l Union,* 175 F.3d 121, 132-33 (2d Cir. 1999) (citation omitted). The standards in Rule 59(e) and Local Rule 6.3 are identical. *Regan v. Conway*, 768 F. Supp. 2d 401, 408 (E.D.N.Y. 2011) (citation omitted).

"A motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision." *McAnaney v. Astoria Fin. Corp.*, 233 F.R.D. 285, 287 (E.D.N.Y. 2005) (citations omitted). Reconsideration may also be granted to "correct a clear error or prevent manifest injustice." *Id.* (citing *Doe v. N.Y.C. Dep't of Soc. Servs.,* 709 F.2d 782, 789 (2d Cir. 1983)).

"To preserve scarce judicial resources and to avoid piecemeal litigation, a motion for reconsideration is 'narrowly construed and strictly applied so as to avoid repetitive arguments on

issues that have been considered fully by the Court.'" *Id.* (citation omitted); *see also Johnson v. New York City,* No. 10-CV-5359, 2011 WL 2471030, at *1 (S.D.N.Y. June 21, 2011) (reconsidering a decision pursuant to Rule 59(e) is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources") (citation omitted). A motion for reconsideration "may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for re-litigating issues already decided by the Court." *Am. ORT, Inc. v. ORT Israel,* No. 07-CV-2332, 2009 WL 233950, at *3 (S.D.N.Y. Jan. 22, 2009) (citations omitted).

## DISCUSSION

**I.  Fair Trial Claims in light of *McDonough* and *Lanning*[3]**

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). To succeed on a Section 1983 claim alleging a fair trial violation, a plaintiff must prove that "an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Ross v. City of New York*, No. 17-CV-3505, 2019 WL 4805147, at *5 (E.D.N.Y. Sept. 30, 2019) (quoting *Garnett v. Undercover*

---

[3] The defendants served the second motion for reconsideration after Local Civil Rule 6.3's fourteen-day deadline. Nevertheless, the Court retains "discretion to consider a motion for reargument notwithstanding the movant's failure to comply with Local Rule 6.3's requirements, but it will only exercise this discretion when justice so requires." *Berman v. N.Y. State Pub. Employee Fed'n*, No. 16-CV-204, 2019 WL 1472582, at *3 (E.D.N.Y. Mar. 31, 2019) (citation and alteration omitted). "Justice requires the exercise of this discretion when, for example, there is an intervening change in controlling law, such as the issuance of a relevant United States Supreme Court decision." *Id.* (citation omitted).

4

*Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citation omitted)).

The defendants maintain that the Supreme Court in *McDonough* enunciated a "favorable termination" requirement for fair trial claims. They also rely on *Lanning*, in which the Second Circuit defined "favorable termination" in malicious prosecution cases as an "affirmative indication of innocence;" according to the defendants, this definition applies to fair trial claims via *McDonough*. As a consequence, the defendants say, the plaintiff's fair trial claims must be dismissed because he cannot establish that his criminal case was terminated in a way that affirmatively indicates his innocence. The plaintiffs respond that the *McDonough* rationale "was expressly limited to determining the accrual of the statute of limitations for a right to fair trial claim *like* McDonough's, and not a broader ruling on the substantive elements of all right to fair trial claims" (ECF No. 60 at 4-5), and that the *Lanning* favorable termination definition applies only to malicious prosecution claims.

  a. *Fair Trial under McDonough*

The Supreme Court held in *McDonough* that a plaintiff "[cannot] bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution," at which time the claim accrues. *McDonough*, 139 S. Ct. at 2156. The Court compared fabricated-evidence claims to malicious prosecution claims—the "most analogous common-law tort"—because "[a]t bottom, both claims challenge the integrity of criminal prosecutions undertaken 'pursuant to legal process.'" *Id.* (citing *Heck v. Humphrey*, 512 U.S. 447, 484 (1994)). In *Heck*, the Supreme Court required a Section 1983 litigant asserting malicious prosecution to prove the "favorable termination" of the underlying criminal process, a concept rooted in "pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *Id.* at 2156-57 (citing *Heck*, 512 U.S. at 484) (citation omitted). Because these concerns of "finality and consistency" apply with equal

5

force to a civil claim "asserting that fabricated evidence was used to pursue a criminal judgment," the *McDonough* Court adopted the favorable termination element for fair trial claims based on fabricated evidence.[4] *Id.* at 2157 (citing *Heck*, 512 U.S. at 484, *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973) and *Younger v. Harris*, 401 U.S. 37, 43 (1971)). Accordingly, there will be a "complete and present cause of action," *Wallace v. Kato*, 549 U.S. 384, 388 (2007), for a fair trial claim based on fabricated evidence "[o]nly once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, *see* 512 U.S. at 486-87 . . . ."[5] *Id.* at 2158.

Most courts in this Circuit read *McDonough* to require favorable termination in fair trial claims that allege a deprivation of liberty resulting from the use of fabricated evidence in a criminal proceeding. *See, e.g.*, *Smalls*, 14-CV-02326, at *5-6 ("[A]lthough the Court did not necessarily impose a favorable termination requirement on all fair-trial claims, the Court strongly suggests that favorable termination *is* a requirement for fair-trial claims like McDonough's . . . that allege a deprivation of liberty resulting from the use of fabricated evidence in a criminal

---

[4] The Supreme Court did not impose a favorable termination requirement on *all* fair trial claims, theorizing that its rationale "would be weaker" where the claim does not allege a "liberty deprivation occasioned by the criminal proceedings themselves." *Id.* at 2160. By contrast, *McDonough* "strongly suggests that favorable termination *is* a requirement for fair-trial claims like McDonough's—and like [the plaintiff's]—that allege a deprivation of liberty resulting from the use of fabricated evidence in a criminal proceeding." *Smalls v. Collins, et al.*, 14-CV-02326, at *5-6 (E.D.N.Y. Mar. 13, 2020), *available at* ECF No. 68-1.

[5] The plaintiff's argument that the Court limited its analysis to the limitations period—and did not mean to include favorable termination as an element in fair trial claims based on fabricated evidence—is not persuasive. *See Smalls*, 14-CV-02326, at *8 ("[W]hether 'favorable termination' is conceived of as a requirement of a fair-trial claim or as a 'procedural bar that must be removed' before the claim can be asserted is immaterial [if the plaintiff] cannot satisfy or remove it.") (citation omitted); *Miller v. Terrillion*, No. 16-CV-52, 2020 WL 549356, at *3 (E.D.N.Y. Jan. 30, 2020) ("Had the Supreme Court confined its ruling to prudential concerns about the applicable limitations period, [the plaintiff's] argument that he need not show a favorable termination might have been sound. Instead, however, the Court went a step further, holding that the plaintiff's fair trial claim itself had not accrued until his acquittal.") (citation omitted).

proceeding."); *Daniels v. Taylor*, No. 18-CV-3717, 2020 WL 1165836, at *4 (S.D.N.Y. Mar. 11, 2020) ("The Supreme Court has since reversed the Second Circuit's decision and held that the plaintiff 'could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution.'") (citation omitted); *Miller*, 2020 WL 549356, at *4 ("[The plaintiff] alleges that the criminal proceedings against him were founded upon fabricated evidence. Inescapably, such [an] allegation falls within *McDonough*'s holding, and consequently, his fair trial claim has not accrued unless and until his criminal proceedings terminated in his favor."); *Goldring v. Donawa*, No. 16-CV-5651, 2019 WL 4535507, at *4 (E.D.N.Y. Sept. 19, 2019) ("[The] plaintiff has not received a favorable termination under Second Circuit case law and, therefore, cannot maintain a § 1983 action for an unfair trial."); *Rosario v. City of New York*, No. 18-CV-4023, 2019 WL 4450685, at *6 (S.D.N.Y. Sept. 16, 2019) ("[T]he Supreme Court recently decided in *McDonough* . . . that fabrication of evidence claims under § 1983 . . . arise not when the evidence is used against a defendant, but when the criminal proceedings have terminated in the defendant's favor. *McDonough*'s outcome coheres with the principle in *Heck* . . . "); *McKenzie v. City of New York*, 17-CV-4899, 2019 WL 3288267, at *16 (S.D.N.Y. July 22, 2019) ("Section 1983 claims for fabrication of evidence cannot be brought 'prior to favorable termination of a plaintiff's prosecution.'") (alteration and citation omitted); *but see Ross*, 2019 WL 4805147, at *6-8.

*Wellner v. City of New York*, upon which the plaintiff relies, is not to the contrary. 393 F. Supp. 3d 388 (S.D.N.Y. 2019), *reconsideration denied*, 16-CV-7032, 2019 WL 5538064 (S.D.N.Y. Oct. 25, 2019). Wellner was charged with four misdemeanors and ultimately pleaded guilty to disorderly conduct, which is a violation, not a crime. *Id.* at 396. Wellner alleged that the police fabricated the evidence that underlay the misdemeanor charges, but not the disorderly

7

conduct charge. *Id.* at 397. Judge Koeltl ruled that the plaintiff was not challenging the "validity of her conviction for the 'offense' of disorderly conduct," and that she could pursue a fabricated-evidence claim "despite the existence of some conviction." *Id.* The plaintiff interprets this holding as "rejecting defendants' argument that *McDonough* added favorable termination as an element to a claim for the denial of the right to fair trial . . . ." (ECF No. 60 at 5.) I disagree. Judge Koeltl found that the plaintiff's criminal prosecution terminated favorably, under *McDonough*, on the misdemeanor charges, which were the subject of her fabricated-evidence claims. *Wellner*, 393 F. Supp. 3d at 395-97. Judge Koeltl found that favorable termination was required, and that the plaintiff established it.[6]

b. *Favorable Termination under Lanning*

In *McDonough*, the Supreme Court did not have "occasion to address the broader range of ways a criminal prosecution (as opposed to a conviction) might end favorably to the accused" because the petitioner was acquitted, which was "unquestionably a favorable termination." 139 S. Ct. at 2160 n.10 (citation omitted). Citing the *Lanning* malicious prosecution standard, the defendants argue that a criminal prosecution ends favorably to the accused when it affirmatively indicates his innocence, and that this definition must apply to fair trial claims based on fabricated evidence because, as the Supreme Court recognized in *McDonough*, they are closely analogous to malicious prosecution claims. (ECF No. 61 at 3-4.) The plaintiff, on the other hand, argues that *Lanning*'s definition should not apply to fair trial claims based on fabricated evidence because of the particular features of the malicious prosecution tort. (ECF No. 60 at 5-7.) The

---

[6] In a more recent decision, Judge Koeltl affirmed that favorable termination is a requirement of a fair trial claim based on fabricated evidence. *Breton v. City of New York*, 404 F. Supp. 3d 799, 815 n.2 (S.D.N.Y. 2019) ("The Supreme Court recently held that a claim for the denial of a fair trial based on fabricated evidence does not accrue until the criminal proceedings terminate in favor of the plaintiff. As explained above, the plaintiff has sufficiently alleged that the criminal proceedings terminated in his favor.") (internal citation omitted).

plaintiff does not propose a definition for the fair trial version of favorable termination, except to say that it must be more expansive than the one for malicious prosecution claims. (*See* ECF No. 65.)

As discussed extensively in *McDonough*, fair trial claims based on fabricated evidence and malicious prosecution claims "challenge the integrity of criminal prosecutions undertaken pursuant to legal process" and implicate the Court's long-standing concerns with "parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *McDonough*, 139 S. Ct. at 2156-57 (citations and internal quotation marks omitted). Given these similarities, the Court held that "it makes sense to adopt the same [favorable termination] rule" for litigants asserting that fabricated evidence was used to pursue a criminal judgment. *Id.* For the same reason, it makes sense to adopt the same favorable termination definition for fair trial claims based on fabricated evidence and malicious prosecution claims. *See Daniels*, 2020 WL 1165836, at *5 ("In light of the Supreme Court's recognition that malicious prosecution is the most analogous common-law tort to a fair trial claim based on fabricated evidence," *Lanning* and other malicious prosecution precedent "must 'guide' but not 'control' the analysis of Plaintiff's fair trial claim.") (citations omitted); *Goldring*, 2019 WL 4535507, at *4 (applying the Second Circuit's favorable termination standard under *Lanning* to a plaintiff asserting a Section 1983 action for an unfair trial).

To hold otherwise, as the plaintiff urges, ignores the similarities between malicious prosecution and fair trial claims based on fabricated evidence, and raises precisely the practical concerns the Supreme Court identified where there is parallel civil and criminal litigation. Indeed, under the plaintiff's theory, a litigant whose guilt or innocence is "left open," *see Rothstein v. Carriere*, 373 F.3d 275, 287 (2d Cir. 2004) (citation omitted), could attack the

9

criminal proceedings collaterally by means of a fair trial claim. As a practical matter, the plaintiff's approach would nullify the favorable termination requirement by encouraging plaintiffs to plead around it by affixing a fair trial label to their claims. In short, the plaintiff has not identified, and I cannot find any meaningful grounds for employing different definitions of favorable termination depending on whether the claim is for malicious prosecution or fair trial. *See Daniels*, 2020 WL 1165836, at *5.

Having concluded that the plaintiff must establish favorable termination under *Lanning*, I turn to whether the resolution of his criminal case—a dismissal—is a favorable termination. I conclude that it is not. The Certificate of Disposition and the minutes of the state proceeding show only that the prosecutor dismissed the charges; no reason was given for the dismissal. (ECF No. 48-1 ¶ 27; *see also* ECF Nos. 48-17, 57-2.) The plaintiff supplemented the record with two documents: a statutorily required statement notice from Ms. Annan's case, which simply documents what Ms. Annan said when she was arrested—that the pills belonged to her sister— and the district attorney's "action sheet" which consists of handwritten notes and unexplained abbreviations that apparently reflect negotiations with Ms. Annan's lawyer for an adjournment in contemplation of dismissal ("ACD") for Ms. Annan. (ECF Nos. 65-1, 65-2.)[7] The plaintiff argues that this evidence proves that he "was innocent of criminal possession of a controlled substance . . . ." (ECF No. 65 at 2.) I disagree.

The statement notice merely provides statutory notice of Ms. Annan's statement, and says nothing about the plaintiff. To the extent that the district attorney's action sheet can be

---

[7] The plaintiff did not include these documents in his brief because he took the position that favorable termination was not an element of a fair trial claim. In a footnote, he requested permission to supplement the record in the event that I disagreed with him. I permitted the plaintiff to supplement the record, but in the future the plaintiff should address foreseeable alternative arguments in the principle briefing.

10

deciphered, it reflects only information about Ms. Annan's case. Neither document says anything about why the *plaintiff*'s case was dismissed, much less demonstrate that his case was dismissed because he was innocent of the crime charged.

Accordingly, the record is silent about the reason for the dismissal, and a dismissal that "leaves the question of guilt or innocence unanswered . . . cannot provide the favorable termination required . . . ." *Lanning*, 908 F.3d at 28-29 (citation omitted); *see also Foy v. City of New York*, 17-CV-0406, 2019 WL 3717317, at *21-22 (E.D.N.Y. Aug. 7, 2019) ("The evidence in the record is simply that Foy's criminal case was dismissed on motion of the district attorney . . . Plaintiff argues that because 'there was no motion pending to dismiss for lack of a speedy trial or to dismiss in the interests of justice, it is fair to conclude that the District Attorney's motion to dismiss was based on an inability to prove guilt beyond a reasonable doubt.' That speculation is insufficient to meet the standard set out in *Lanning*.") (citations and alterations omitted); *McKenzie*, 2019 WL 3288267, at *15.

Accordingly, I dismiss all fair trial claims, and the failure to intervene claims premised on alleged fair trial violations, in light of the changes in law. Because the parties stipulated that Lieutenant Ryan cannot be held liable for claims arising from the initial false arrest (*see* ECF No. 55 at 4 n.1), he is dismissed from the case.

In any event, I would have modified Judge Vitaliano's order and granted summary judgment to Lieutenant Ryan on the failure to intervene claim. Judge Vitaliano dismissed the fair trial claims against Lieutenant Ryan because the evidence did not establish his personal involvement in either alleged fabrication, but denied summary judgment on the claims that he failed to intervene to prevent either alleged fabrication. Judge Vitaliano's reasons for granting summary judgment on the fair trial claims—the lack of Lieutenant Ryan's personal involvement

in either fabrication—compel the conclusion that a reasonable jury could not possibly find that he had the opportunity to prevent those fabrications. *See Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (Liability for failure to intervene only attaches when, among other things, "the officer had a realistic opportunity to intervene and prevent the harm."), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012)); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.") (citation omitted).[8]

## II. Qualified Immunity

The plaintiff argues that Judge Vitaliano did not consider the totality of the circumstances surrounding the plaintiff's arrest when he found that the defendants were entitled to qualified immunity on the false arrest and malicious prosecution claims. Specifically, the plaintiff argues that the Court overlooked the following exculpatory facts: that (i) Ms. Annan owned the car and the purse in which the drugs were found, (ii) the purse was outside the plaintiff's reach, (iii) the medications were in a sealed pharmacy bag, and (iv) Ms. Annan told the defendants that the pills were hers and intended for her sister. According to the plaintiff, these facts undermine any arguable probable cause for his arrest.[9]

---

[8] The plaintiff also moved to reconsider Judge Vitaliano's order dismissing the fair trial claims against Lieutenant Ryan on the ground that Judge Vitaliano did not draw factual inferences in the plaintiff's favor. Even if the fair trial claims survived *McDonough* and *Lanning*, I reject that argument. The undisputed evidence in the record establishes only that Lieutenant Ryan was present at the scene throughout the stop, and that he verified the arrests. (ECF No. 50-1 ¶¶ 7, 23.) The plaintiff did not establish Lieutenant Ryan's personal involvement in the alleged fabrications—changing the location of the drugs or omitting the pharmacy bag from the evidence voucher—and Judge Vitaliano properly declined to fill that gap in evidence with speculation.

[9] The plaintiff alternates between "probable cause" and "arguable probable cause" in analyzing whether the facts eliminate the defendants' qualified immunity defense. The relevant question in a qualified

12

In fact, Judge Vitaliano expressly considered these facts in his careful review of the record, but found that they did not establish that the defendants lacked arguable probable cause to arrest the plaintiff. Thus, Judge Vitaliano considered Ms. Annan's claims that some of the drugs were hers and some were her sister's, but held that the officers were not bound to credit them. (ECF No. 51 at 8.) As for the plaintiff's claim that the pills were in a sealed bag, Judge Vitaliano noted that the pill bottle had no label, which violated Section 3333(2) of the New York Public Health Law and undermined Ms. Annan's claims of ownership. (*Id.* at n.4.) Finally, in his analysis of New York's "automobile presumption," Judge Vitaliano noted the location from which the officers recovered the drugs, and concluded that the officers reasonably believed that the automobile presumption applied to the plaintiff and supplied probable cause for his arrest. (*Id.* at 11-12.) Based on his review of the factual record, Judge Vitaliano held that the plaintiff did not establish that the defendants lacked arguable probable cause to arrest him. In short, Judge Vitaliano did not overlook any facts.

The plaintiff also argues that Judge Vitaliano should not have dismissed the malicious prosecution claim against Detective Shery, and that he did not consider facts that dissipated probable cause—that Ms. Annan's sister, Fatima, eventually told the officers that the pills belonged to her. The plaintiff did not make this argument to Judge Vitaliano. Rather, his argument was that the officers did not have probable cause for the initial arrest. (ECF No. 50 at 9 ("First, with respect to probable cause for the malicious prosecution, because plaintiff has established a question of fact as to whether there was probable cause to arrest, as argued at Point

---

immunity inquiry for false arrest and malicious prosecution claims is whether the facts establish that the officer had "arguable probable cause" for the arrest, which exists "when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (citations and internal quotation marks omitted).

13

I, *supra*, he has also established a question of fact as to probable cause to prosecute.") (citation omitted)). A litigant cannot use a motion for reconsideration to "assert new arguments or claims which were not before the court on the original motion." *In re Currency Conversion Fee Antitrust Litig.*, No. M 21-95, 2010 WL 2033811, at *1 (S.D.N.Y. May 21, 2010) (citations omitted); *see also Kunica v. St. Jean Fin., Inc.*, 63 F. Supp. 2d 342, 346 (S.D.N.Y. 1999) ("A party in its motion for reargument may not advance new facts, issues or arguments not previously presented to the court.") (citation and internal quotation marks omitted). In any event, the officers were not obligated to accept Fatima Annan's claim. *See Deanda v. Hicks*, 137 F. Supp. 3d 543, 572 (S.D.N.Y. 2015) ("Hicks was under no obligation to credit Deanda's self-serving claims that the oxycodone pills belonged to her sister and that her sister had a prescription for the pills, or to verify [her sister's] account of the pill bottle before arresting Plaintiff.") (citations omitted). Accordingly, the plaintiff's motion to reargue on this basis is denied.

**CONCLUSION**

The defendants' motion for reconsideration is granted with respect to the fair trial claims and the failure to intervene claims premised on the alleged fair trial violations, and they are all dismissed. Because the parties stipulated that Lieutenant Ryan cannot be held liable for claims arising from the initial false arrest, he is dismissed from the case.

The plaintiff's motion for reconsideration is denied. Accordingly, the plaintiff may proceed to trial on the following claims as to the following defendants: false arrest with respect to the initial stop, and failure to intervene during the false arrest with respect to the initial stop, as against detectives Shery, Moyer and Scarlatelli.

**SO ORDERED.**

      s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: March 24, 2020
      Brooklyn, New York